**TEARNEY et ux. v. DONAHOE et al.**

No. 19953. Opinion Filed April 14, 1931.

Rehearing Denied May 5, 1931.

Cress, Tebbe & Cress, for plaintiffs in error.

W. M. Bowles, for defendants in error.

KORNEGAY, J. This is a proceeding in error brought from the district court of Noble county, Honorable W. E. Rice being the trial judge. A search of the case-made discloses that a proceeding was filed in that court to foreclose a mortgage in favor of D. J. Donahoe and J. J. Donahoe against Joseph M. Tearney and Mollie Tearney, his wife, these latter being the plaintiffs in error and the former the defendants in error.

The case-made, on page 3, shows that the judgment was entered on the 23rd of February, 1928, all parties being represented by attorneys, other parties being in it for the purpose of clearing the title, but these being the parties really at interest. The plaintiffs in that suit recovered judgment for $7,870.92, and for $850.00 for attorney's fees and for cost. They further secured a judgment ordering the sale of 240 acres of land in Noble county to satisfy a mortgage that had been made by the plaintiffs in error, and the amount of the mortgage was fixed as enumerated above.

The Federal Land Bank at Wichita, Kan., held a first mortgage upon the property, but

it does not appear to have been made a party to the proceedings, though a part of the plaintiffs' judgment was to recover some advancements made on installments of interest paid to go on the Federal Land Bank's mortgage.

The mortgaged property was ordered to be appraised, and directions were given to apply the proceeds of the sale to the cost of the action and to the taxes due, the balance to be applied to the satisfaction of the judgment, and the balance, if any, turned over to the court clerk for the benefit of the defendants, J. M. Tearney and Mollie Tearney, his wife.

On this judgment an order of sale was issued on the 5th of March, 1928, commanding the sheriff to sell the property, after advertisement, and to make return within 60 days. The sheriff made a return stating that he proceeded to advertise the land described, but that there was an incorrect description in the notice of sale, and that he was returning the order of sale not executed on account of the notice not being sufficient, and asked for an alias order. The date of this return was the 16th of April, 1928. The notice that is attached to it shows that the sale was to have been had on the 9th of April, 1928. The notice prescribed that the property must sell for two-thirds of its appraised value subject to a first mortgage of $8,500 in favor of the Federal Land Bank. There was proof of this notice having been published five consecutive weeks in the Perry Journal.

The appraisement was returned showing that the appraisers appraised the land in four separate tracts. One tract was valued at $1,080, another tract at $1,200, another tract at $12,000, and another one at $1,200, total valuation being $15,480, and it was stated in the appraisement that it was subject to a first mortgage of $8,500 in favor of the Federal Land Bank of Wichita, Kan. That appraisement was filed on the 26th of March, 1928.

After the return on the 16th of April, 1928, an alias order was issued to the sheriff commanding him to sell the property to satisfy the judgment and the cost. This alias recited the former proceeding and the statement of the return as to the former order not having been executed. The sheriff's return on this was made on the 19th of May, 1928, and it showed that the judgment creditors had bid the sum of $7,000 for the property subject to the mortgage of the Federal Land Bank of Wichita. It further showed that the $7,000 was more than two-thirds of the appraised value of the property. Attached to this return was a copy of the appraisement made on the 26th of March, 1926, the items of which have been set forth above.

The notice of the sheriff's sale was also returned with the return, which was dated the 16th of April, 1928, and appears to have been published for five consecutive weeks in the Perry Journal, the first publication being made on the 19th of April, 1928. There is added to it the statement that the last publication was made on the 10th of April, 1928. On the 19th of May, 1928, the plaintiffs filed a motion to confirm the sale. On the 25th of May, the plaintiffs in error filed objections to the confirmation of the sale. According to the case-made, this is the first objection that had been raised by the plaintiffs in error to the proceedings so far as the files show.

In this motion the legality of the alias order was attacked because the sheriff had made a false return on the first one, which was not executed. The allegation was made that in fact under the first order of sale, the sheriff had received a bid of the judgment creditors of $15,500 for the land, which was more than two-thirds of the appraised value, and that the sale had been made for this amount, subject to the first mortgage to the Federal Land Bank of Wichita, Kan.

It was further claimed that the sheriff had no authority to pronounce the sale void because of the misdescription of the property to be sold contained in the notice. There was a further attack upon the ground that the first appraisement did not answer for the alias order of sale. The further ground was made that the notice of the sheriff's sale under the alias order was not published as required by law, and that there was $18.50 more court cost included in the notice than the alias order called for and the alias order carried a statement of $10 due to the clerk for cost accruing, whereas it was only $1.20. A further attack was made upon the ground that the tracts of land were not sold separately, but sold in bulk, subject to the Federal Land Bank's loan. There was a further allegation that the property did not bring two-thirds of its appraised value, and that the appraisement was false and fraudulent and unfair, and it was made subject to a loan of the Federal Land Bank in the sum of $8,500, when in truth and in fact it was only $6,000, as it had been reduced by payments. An attack was made on the appraisement because it was too low, and it was affirmatively stated that the property was worth from $20,000 to $25,000 in the open market, and that the sale price obtained at the sale

was excessively low, and was $8,500 less than the same purchaser bid for it on the 9th of April. There was a statement of objection to the confirmation of the sale, and a request to the court to do equity in the premises by requiring the sheriff to amend his return to the original order of sale and speak the truth and, if the original sale under the said original order of sale was sufficient, to do equity thereunder, and if not sufficient, to set aside the same, and a further request was made of the court, because of the irregularity in the second order of sale; to set aside and vacate the sale thereunder, and for all other relief that might be just and equitable in the premises.

The notice of sheriff's sale on the first order of sale was set out. On the 28th day of May, the defendants filed a motion to cause the sheriff to amend his return on the original order of sale. On the same day the defendants asked the court to confirm the first sale.

With this state of the record, the parties introduced proof as to these allegations, and the court sustained a demurrer to the evidence of the plaintiffs in error, asking for the amendment of the return of execution and for confirmation of that sale. Motions for new trial were made and notice of appeal to this court was given after making the necessary exceptions.

The application of the plaintiffs in error to reject the last sale was refused, followed by exceptions, and motion for new trial, and plaintiffs in error have brought here for consideration the action of the lower court in confirming the sale under the last order.

An elaborate brief has been submitted by the plaintiffs in error to sustain their position. That brief contains 69 pages of closely typewritten legal sized paper, and many phases of official action with reference to executions and sales of land under it are discussed therein. There are four propositions of law urged under part 1, and under part 2 of the brief there are five more. The main thing, however, that the plaintiffs in error apparently are trying to carry out may be summarized as follows: To make the bid on the land stand. If the bid of $15,500, made by the judgment creditors on the first sale, can be made to stand up, and the bidder can be made under that to take the land, subject to the incumbrance of $8,500, then the plaintiffs in error would have several thousand dollars coming to them, after satisfying plaintiffs' mortgage, leaving them with land incumbered to the amount of the first mortgage. The value of the land as fixed by the appraisers was $15,480.

Evidently the bidder in bidding the $15,500 thought he was bidding on the land clear, as distinguished from bidding that much for the land subject to the mortgage, amounting originally to $8,500, slightly reduced.

We do not think that it would be just to hold that by virtue of the accident of the judgment creditors being mistaken in the effect of the bid, that thereby the defendants could make that much, as there is nothing of estoppel or the defendants having acted to their prejudice, disclosed by this record. Evidently, from this record, the plaintiffs in error stood by and allowed the second sale to be had without any objections, though the return of the sale was on file in a case in which they were parties, and there appeared in the same newspaper that had advertised the first sale, the advertisement of the second sale. The advertisement of the first sale did not follow the order of the court. It left out 30 acres of land. This evidently was the mistake of the printer, and not of the litigants.

To compel the purchaser to accept 30 acres less than he thought he was buying manifestly would not be just. As the record indicates, the plaintiffs in error recognized this principle, and, as they claimed that the court ought to do equity, they were willing to make a deed for all of the property, if the first bid would be allowed to stand. This seems not to have occurred to them, however, until after the second sale was had.

In the colloquy between the attorneys, at the time they were introducing evidence before the lower court, when the plaintiffs in error were claiming that they desired to do equity, and complaining of the want of equity if the last sale was confirmed, a proposition was made by the judgment creditors, who were purchasers, to set aside what had been done and have a new sale, but this proposition was refused by the plaintiffs in error. The lower court then proceeded to confirm the last sale. We think it would have been unjust not to have done so under the circumstances.

Complaint was made of selling the land in bulk, as distinguished from selling it in parcels. However, there was a mortgage on it that the purchaser would take the land subject to. It would not have been advantageous to sell it, therefore, in parcels and have a later complaint of equities arising, when it came to a proposition as to which one of the purchasers would discharge the dominant mortgage.

Further complaint is made, however, of

including more cost than was due in the alias execution, and in the notices of sale. However, this can be corrected at any time on reasonable notice, and the deficiency judgment could be reduced by a credit. entered perhaps voluntarily by the parties, and if not, by motion in the lower court.

We think the lower court did right in confirming the sale, and its action in so doing is affirmed.

LESTER, C. J., and RILEY, HEFNER, CULLISON, SWINDALL, ANDREWS, and McNEILL. JJ., concur.

CLARK. V. C. J.. absent.